**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

KENDALL L. BAKER,
             Appellant,

        v.

DEPARTMENT OF DEFENSE,
             Agency.

DOCKET NUMBER
SF-0752-16-0128-I-1

DATE: November 22, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Bradley R. Marshall</u>, Charleston, South Carolina, for the appellant.

<u>Douglas W. Frison</u>, Esquire and <u>Jonathan A. Beyer</u>, APO, AP, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

At the time of the action under review, the appellant occupied the competitive-service position of GS-4 Office Attendance Clerk at a high school in Okinawa, Japan. Initial Appeal File (IAF), Tab 6 at 31. He first became employed with the Department of Defense Education Activity (DODEA) of the Department of Defense Dependent Schools (DODDS) in 1999 when he was hired locally, and he began working at the high school in 2005. *Id.* at 34-36. His initial overseas appointment was pursuant to 10 U.S.C. § 1586 (Rotation of Career-Conditional and Career Employees Assigned Duty Outside of the United States); Department of Defense Administrative Instruction (DOD AI) § 1400.25; and DODEA Administrative Instruction (DODEA AI) § 5666.01, Five-Year Limitation on Competitive Employment in Foreign Areas. *Id.* at 97-138. Individuals appointed under these provisions are employed overseas on a rotational basis for up to 5 years, although a maximum of 2 additional years may be granted under limited circumstances where management determines that there exists a potential disruption to the continuity of essential operations. *Id.* at 97-98, 126. Additionally, a one-time extension of 6 months or less may be

granted for compassionate or personal reasons relating to the employee's particular circumstances. *Id.* at 104.

¶3 In settlement of a 2012 equal employment opportunity (EEO) complaint, the appellant and management agreed that his current tour would be extended for 2 additional years, until November 20, 2015. IAF, Tab 45 at 7-9. On April 29, 2015, the appellant's school principal was notified that the appellant's tour would expire and that she needed to determine whether she wished to extend it. IAF, Tab 6 at 96. On May 7, 2015, she indicated that she would not do so, *id.* at 95, and the following day she notified the appellant of that decision and his options; specifically, that, having no return rights to a position in the United States, he could register in the agency's Priority Placement Program (PPP) to secure a return assignment in the United States, or he could resign. *Id.* at 94. The appellant agreed to register in the PPP, *id.*, but he also, in early May 2015, requested a 2-year extension of his tour for "humanitarian reasons" explaining that his 14-year old son, diagnosed with leukemia in 2013, was undergoing maintenance treatment at a Japanese hospital, and that it would be a great financial burden on the appellant and his family if he were required to transfer. IAF, Tab 44 at 9-12. In support of his request, the appellant provided a medical report from his son's physician which, after a period of time, was translated from Japanese to English. *Id.* at 23-25. The Okinawa District Superintendent forwarded the information to the DODDS Director of the Pacific, indicating that he favored granting the appellant's request. *Id.* at 14-18.

¶4 On September 22, 2015, the agency notified the appellant that a "position match" had been found for him under the PPP, that of a GS-4 Office Automation Clerk with the Department of the Navy in Orlando, Florida. IAF, Tab 6 at 58-66. He was advised that he had to accept or decline the offer no later than close of business on Friday, September 25, 2015, and that, if he declined or failed to respond, he would be removed from the PPP and could be terminated for failure to comply with the DOD rotation policy. *Id.* at 59. On September 24, 2015, the

appellant asked the Acting Director of DODDS for additional time to decide on the job offer because the agency had not yet answered his extension request. IAF, Tab 44 at 26. On September 28, 2015, the Acting Director denied the appellant's request for a 2-year extension of his tour, citing provisions of the DOD AI and the DODEA AI, which provide for such extensions based only on mission needs. IAF, Tab 6 at 56. She reminded the appellant that he had a current job offer that he needed to accept or decline "immediately" and that, if he did not accept it, action would be taken to terminate his employment effective November 20, 2015, the end of his tour. *Id.* On September 29, 2015, the appellant requested a 6-month extension based on his son's ongoing medical treatment and to allow him to complete the current school year. IAF, Tab 44 at 28. The Acting Director denied that request as well, given that that the son's condition was chronic. *Id.*

¶5        On October 1, 2015, the appellant's principal proposed his removal for nondisciplinary reasons; namely, his failure to accept a valid PPP job offer. IAF, Tab 6 at 51-52. After he replied orally and in writing, *id.*, at 35-50, the Superintendent issued a letter of decision, finding the charge sustained, warranting the appellant's removal to promote the efficiency of the service, effective November 20, 2015. *Id.* at 31-34.

¶6        On appeal to the Board, the appellant alleged that the agency subjected him to "disparate treatment and hostile work environment discrimination and retaliation," IAF, Tab 1 at 17, and violated his right to constitutional due process. *Id.* at 18-20. As the record developed, he expanded his claims to include discrimination based on race, age, sex, and disability, retaliation for engaging in EEO activity and protected whistleblowing activity, violation of due process and harmful procedural error. IAF, Tabs 39, 46. Following a hearing, the administrative judge issued an initial decision in which she first found that the agency proved that the appellant failed to accept a valid job offer and that therefore the charge was sustained. IAF, Tab 57, Initial Decision (ID) at 7-10. In this regard, the administrative judge found that, in the absence of a business

reason for doing so,[2] the agency was not required to grant a 2-year extension, noting that, when the proposal notice was issued, the appellant already had worked in his overseas rotational positon for more than 14 years. ID at 8. The administrative judge further found that, although the agency could have granted the appellant's request for a 6-month extension, it was not required to, and, in any event, it provided legitimate reasons for not doing so; namely, that his son's condition was not acute. ID at 8-9. Addressing the appellant's claim that the agency delayed in answering his 2-year extension request, the administrative judge found that the appellant still could have accepted the offer even after his extension request was denied, but that he did not do so. ID at 9. Finally, the administrative judge considered, but rejected, the appellant's claim that the offer made to him under the PPP was invalid. ID at 9-10.

¶7      The administrative judge also considered the evidence the appellant offered in support of his claim that the agency discriminated against him on the base of his race, age, and sex, and that it retaliated against him for his EEO activity, but found that he did not establish these claims. ID at 10-13. The administrative judge further found that, although the appellant was disabled by a torn meniscus, back, shoulder impairments, and was a qualified individual with a disability, the agency had articulated a nondiscriminatory reason for the action, and that, weighing all the evidence, the appellant did not meet his overall burden of proving discrimination. ID at 14-17. Concerning the appellant's allegation of whistleblowing retaliation, the administrative judge found that his 2012 claim that the agency had forged his signature was a protected disclosure that he reasonably believed evidenced a violation of law, rule, or regulation, and that he was removed within a period of time such that a reasonable person could conclude

---

[2] The agency relied on the appellant's supervisor's determination that his GS-4 position was not a hard-to-fill position in that it could have been easily filled by a service member's family member. Hearing Compact Disc 1 (testimonies of the Acting Director of DODDS and the Human Resources Chief).

that the disclosure was a contributing factor, but that the agency showed by clear and convincing evidence that it would have removed him in the absence of the disclosure. ID at 17-19.

¶8 The administrative judge next addressed the appellant's claim that he was not provided a meaningful opportunity to respond because the deciding official lacked the decision-making authority to make a decision other than removal and considered ex parte information, and that the deciding official was biased, but she found that the appellant failed to establish a denial of due process as to these claims. ID at 19-22, 24. The administrative judge considered, moreover, whether the agency committed harmful procedural error regarding the requested extensions of the appellant's tour but found no rule or regulation that required the agency to grant such requests under these circumstances. ID at 22-24.

¶9 Finally, finding that the agency showed that a nexus existed between the appellant's failure to accept the job offer and the efficiency of the service, ID at 24-25, and that removal was a reasonable penalty for the sustained charge, ID at 25-26, the administrative judge sustained the agency's action. ID at 1, 26.

¶10 The appellant has filed a petition for review, Petition for Review (PFR) File, Tab 3, to which the agency has responded in opposition, PFR File, Tab 5, and the appellant has filed a reply, PFR File, Tab 6.

## ANALYLSIS

¶11 On review, the appellant claims that the administrative judge erred in finding that he did not establish his claims of denial of due process and harmful error.[3] PFR File, Tab 3 at 13-17. We first address his due process claim. An agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action

---

[3] The appellant does not challenge on review the administrative judge's findings on the merits of the charge, or her findings on the appellant's claims of discrimination and retaliation. We discern no basis upon which to reverse those findings.

that deprives him of his property right in employment constitutes an abridgement of his constitutional right to minimum due process of law, i.e., prior notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). However, due process is a flexible concept that calls for such procedural protections as the particular situation demands. *See, e.g.*, *Gajdos v. Department of the Army*, 121 M.S.P.R. 361, ¶ 18 (2014). It does not require that the deciding official have unfettered discretion to take any action he or she believes is appropriate upon considering the proposed adverse action. *See Rodgers v. Department of the Navy*, 122 M.S.P.R. 559, ¶ 6 (2015); *Putnam v. Department of Homeland Security*, 121 M.S.P.R. 532, ¶ 13 (2014); *see also Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 27 (2014) (stating that due process does not demand that the deciding official consider alternatives that are prohibited, impractical, or outside of management's purview).[4]

¶12          In support of his claim that he was denied due process, the appellant argues on review, as he did below, that he was not provided a meaningful opportunity to respond because the deciding official had no choice but to remove him, and that he, the appellant, was a loyal and devoted employee. PFR File, Tab 3 at 15. The deciding official testified that, faced with a "tough" decision, he contacted the Human Resources (HR) Chief and the Office of General Counsel (OGC) to find out whether there were any alternatives to removal, but was advised that, pursuant to the pertinent provisions of the DOD AI and the DODEA AI, IAF, Tab 6 at 133, there were none because the appellant had failed to respond to the one valid job offer under the PPP to which he was entitled. Hearing Compact Disc (HCD) 1 (testimony of the deciding official). While it is true that the deciding official lacked the authority to grant an extension of the appellant's tour, IAF, Tab 6

---

[4] Although these Board cases arose in the context of a Government-wide furlough, 5 U.S.C. § 7512(5), the due process concepts cited therein remain applicable in the case of a removal, 5 U.S.C. § 7512(1).

at 110, the deciding official possessed sufficient decision-making authority in the context of this removal action to satisfy the appellant's right to due process. *Cf. Gajdos*, 121 M.S.P.R. 361, ¶¶ 20-23, 25 (finding that the procedures used by the agency did not deprive the appellant of constitutional due process even when the deciding official's discretion to invoke alternatives to the furlough was limited); *Putnam*, 121 M.S.P.R. 532, ¶ 12 (finding that the right to due process is not violated by a deciding official's limited authority to select a penalty other than the proposed indefinite suspension for the revocation of a security clearance).

¶13     In further support of his claim that he was denied due process, the appellant also argues on review, as he did below, that, by his contacts with the HR Chief and representatives of the OGC that were not shared with the appellant, the deciding official considered new and material information that he obtained ex parte. PFR File, Tab 3 at 15-17. However, ex parte information only violates an employee's right to due process when it introduces new and material information to the deciding official. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279 (Fed. Cir. 2011); *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1377 (Fed. Cir. 1999). To determine whether the deciding official's consideration of this ex parte information constituted a due process violation, the inquiry is whether the information is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances, and the Board will consider, among other factors: (1) whether the ex parte information merely introduces "cumulative information" or new information; (2) whether the employee knew of the information and had a chance to respond to it; and (3) whether the ex parte information was of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Ward*, 634 F.3d at 1279; *Stone*, 179 F.3d at 1377.

¶14     The information from the HR Chief and the OGC that the deciding official received in response to his question as to whether there were any alternatives to

the appellant's removal, given that his tour was due to end, not having been extended, and that he had received a valid job offer under the PPP to which he had failed to respond, was that there were no alternatives. HCD 1 (testimonies of the HR Chief and the deciding official). This information regarding the implications of the appellant's action or inaction was not new, but rather cumulative, because it was explained to him in the various notices he received from the agency, including the proposal notice, and because it was part of the DOD AI and DODEA AI, agency orders to which the appellant was subjected during his lengthy tour in Japan and of which he was aware. Moreover, the information did not result in undue pressure upon the deciding official to rule in a particular manner; rather, it confirmed that, under the particular circumstances presented, he had no choice but to uphold the proposed action. We find, therefore, that the appellant has not shown that the administrative judge erred in rejecting as unsupported the appellant's claim that the agency denied him due process.

¶15        We now address the appellant's claim of harmful error. To show harmful procedural error, an appellant must prove that the agency committed an error in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. 5 C.F.R. § 1201.56(c)(3); *Pumphrey v. Department of Defense*, 122 M.S.P.R. 186, ¶ 10 (2015). Here, the appellant argues that the agency erred by requiring him to respond to the job offer while his request for an extension of his tour was pending because its policy is to suspend the PPP process until a decision has been made on an employee's extension request for which his supervisors have indicated support. PFR File, Tab 3 at 9, 14-15. Although the appellant argues that various agency officials testified that such a policy exists, their actual testimony was regarding a hypothetical situation, not the situation presented here. HCD 1 (testimony of the HR Chief); HCD 2 (testimonies of the DODDS Director of the Pacific and the HR Specialist). Neither the DOD AI nor

the DODEA AI supports the appellant's claim that the agency had such an official policy. IAF, Tab 6 at 97-138. Moreover, at the outset, the appellant's supervisor specifically recommended against granting an extension of the appellant's tour. *Id.* at 95. Even if the agency had such a policy, the appellant has failed to show how the result in this case would have been different. In fact, after the agency advised him that the Acting Director had denied his requests for a 2-year extension and a 6-month extension, he still failed to accept the agency's offer which was the basis for his removal. Any speculation on the appellant's behalf as to how the result before the agency might have been different is insufficient to establish harm. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 682-83 (1991) (noting that an appellant must provide proof of actual harm resulting from an agency procedural error, which requires more than the possibility that the same evidence presented to the Board might have been viewed differently by the agency). We find therefore that the appellant failed to prove that the administrative judge erred in denying his claim of harmful procedural error.[5]

## NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their

[5] The appellant does not challenge on review the administrative judge's findings regarding nexus and the reasonableness of the penalty. We discern no basis upon which to disturb those findings.

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7] The court of appeals must <u>receive</u> your

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

> http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:               /s/ for

                                    Jennifer Everling
                                    Acting Clerk of the Board

Washington, D.C.